UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at Pikeville)

| | | |
|---|---|---|
| JONATHAN LEE SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7: 20-094-DCR |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff and federal inmate Jonathan Lee Smith is presently confined at the United States Penitentiary ("USP")-Thomson in Thomson, Illinois. Proceeding without an attorney, Smith filed a Complaint against the United States under the Federal Tort Claims Act, 28 U.S.C. § 2670 *et seq*. ("FTCA"). [Record No. 5] The United States responded with a motion to dismiss Smith's Complaint. [Record No. 17] Following briefing, the matter is ripe for review.

**I.**

Smith alleges negligence by Bureau of Prisons ("BOP") staff related to a physical injury that occurred while he was housed at the USP-Big Sandy in Inez, Kentucky. [Record No. 5] Smith asserts two claims in his Complaint: 1) a "negligent lifting" claim in which he contends that his shoulder was injured when BOP employees lifted him from the ground while he was handcuffed on April 15, 2019; and 2) a claim that federal employees were negligent in their treatment of his shoulder injury when he was transferred to another federal facility in November 2019, despite the fact that he had an "active medical hold" in place.

-1-

According to Smith, on April 15, 2019, after an earlier incident during which he "expressed verbal complaints" separately to Lieutenant Terry Melvin and to C.O. Clarke regarding food delivered to Smith's cell, an emergency response team was dispatched to the cell to remove him. Smith complied with a request to submit to hand restraints prior to being removed from his cell. Smith alleges that he was then removed from the cell and placed on the ground with his hands cuffed behind his back. According to allegations of the Complaint "[w]hen Plaintiff was picked up off the ground he was snatched up by the handcuffs while his hands were cuffed behind his back," which he alleges was negligent. [*Id*. at p. 4] Smith also alleges that snatching him off the ground by the handcuffs is a violation of BOP Policy. According to Smith, the policy provides that "Staff are cautioned not to use restraints when lifting or carrying a[n] inmate." [*Id*.] Smith further asserts that, after he was lifted by the handcuffs, he felt something in his shoulder pop, causing him to scream in pain. [*Id*.]

Smith's Complaint also contains a separate medical negligence claim related to the treatment of the shoulder injury allegedly sustained on April 15. Smith contends that, after the injury, follow-up medical providers determined that he needed to be treated by a "special orthopedic doctor" for the shoulder injury. [Record No. 5 at p. 5] Smith states that he was prescribed moloxicam for the constant pain and that Dr. Jack Steel also commenced physical therapy. [*Id*.] Smith states that he continued physical therapy for over four months before he was transferred to a difference federal facility (USP-Thomson) on November 7, 2019. [*Id*.]

This claim does not relate to medical treatment, but relates to an exam on November 5, 2019, and Smith's subsequent transfer to USP-Thomson. Smith alleges that, on November 5, 2019, he was examined by Dr. Steel and that Dr. Steel ordered an MRI. According to Smith, while Dr. Steel was examining him, he "heard Ms. Crum the nurse supervisor trying to

convince Dr. Steel to end treatment.  He refused, and ordered a MRI.  2 days later I was transferred to another prison (USP-Thomson) while I had an 'active medical hold,' another BOP policy violation."  [*Id*. at p. 5]  Smith then claims that, when he arrived at USP-Thomson, prison staff claimed that they knew nothing about the November 5 examination or the MRI that Dr. Steel allegedly ordered.  According to Smith, "[t]he fact that [D]octor Steel ordered a MRI on 11/5/19 and BOP staff refuse to conduct the MRI, I believe is a act of negligence. Without a MRI we may never know the full extent of my shoulder injury."  [Record No. 5 at p. 7]

Smith's seeks $75,000 in monetary relief, in addition to an order directing the BOP to conduct the MRI and reinstate physical therapy and moloxicam medication.  [Record No. 5 at p. 12]  He seeks to pursue his claims pursuant to the FTCA, which permits an action against the United States for negligent or intentional acts committed by its employees during the course of their employment.  *See* 28 U.S.C. § 1346(b)(1).

As noted above, the United States has moved to dismiss Smith's Complaint.  [Record No. 17]  First, it argues that the "negligent lifting" claim is barred by the discretionary function exception to the FTCA.  Therefore, the Court lacks jurisdiction over Smith's claim and it should be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  Next, the Government characterizes Smith's medical negligence claim as being based on the medical treatment provided to Smith *after* he was transferred from USP-Big Sandy to USP-Thomson in Illinois.  Thus, it argues that this claims is brought in the wrong venue.  According to the Government, this second claim should have been filed in Illinois where Smith now resides and where the alleged acts or omissions occurred.  Pursuant to this argument, the claim should be dismissed under Rule 12(b)(3) of the Federal Rules of Civil Procedure.  [Record No. 17]

## II.

### A.

A motion filed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure may challenge subject matter jurisdiction in two ways: a facial attack or a factual attack. *See Gentek Bldg. Products, Inc. v. Sherwin–Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). A facial attack "questions merely the sufficiency of the pleading". In resolving a motion making such a challenge, the Court takes the allegations contained in the Complaint as true. *Id*. (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). Thus, the review applied to a facial attack is identical to that used when reviewing a motion to dismiss invoking Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Glob. Tech., Inc. v. Yubei (XinXiang) Power Steering Sys. Co.*, 807 F.3d 806, 810 (6th Cir. 2015).[1]

But where, as here, a defendant makes a factual attack, the attack challenges the existence of subject matter jurisdiction. And "[w]hen a Rule 12(b)(1) motion attacks a complaint's factual predicate, the court does not presume that the plaintiff's factual allegations are true." *Id*. As a result, when reviewing a factual attack, "the court can actually weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction." *Id*. (quoting *Carrier Corp. v. Outokumpu Oyj,* 673 F.3d 430, 440 (6th Cir.2012). *See also United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994); *Gentek Bldg. Products, Inc.*, 491 F.3d at 330 ("When a factual attack…raises a factual controversy, the district court must weigh the

---

[1] A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the plaintiff's Complaint. *Gardner v. Quicken Loans, Inc.*, 567 F. App'x 362, 364 (6th Cir. 2014). When addressing a motion to dismiss, the Court views the Complaint in the light most favorable to the plaintiff and accepts as true all "well-pleaded facts" in the Complaint. *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014).

conflicting evidence to arrive at the factual predicate that subject-matter [jurisdiction] does or does not exist.").  In its review, "a court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case." *Cartwright v. Garner*, 751 F.3d 752, 759–60 (6th Cir. 2014).  The party invoking federal jurisdiction (here, the plaintiff) bears the burden of establishing it. *Glob. Tech., Inc.*, 806 F.3d at 810.

The Government argues that the factual basis for Smith's claim (i.e., that he was lifted by the restraints in violation of BOP Policy) is demonstrably untrue.  [Record No. 17]  Thus, according to the defendant, Smith's claim is clearly about the exercise of discretion used by federal employees when lifting Smith while he was handcuffed.  In support, it submits video surveillance footage of the April 15, 2019 incident, which shows that, after Smith was removed from his cell (and while he was handcuffed), he stands upright, then folds his legs underneath him and exclaims that that his legs "gave out."  To transport him for further examination, the extraction team surrounded Smith and lifted him by the tops of his arms and armpits, and ***not*** by his hands or handcuffs.  [Record No. 21]

Smith refers to this camera footage in his Complaint, noting that the incident was recorded by a staff member and that "[c]amera footage will then show Plaintiff being removed from the cell and being placed on the ground with his hands cuffed behind his back.  When Plaintiff was picked up off the ground he was snatched up by the handcuffs while his hands were cuffed behind his back."  [Record No. 5 at p. 4][2]  Smith's allegations are very clear that

---

[2] While the sufficiency of the Complaint is generally tested with reference only to the face of the pleading itself, *Burns v. United States*, 542 F. App'x 461, 466 (6th Cir. 2013), this includes

his claim is that "[o]fficers snatching [him] off the ground by the handcuffs is a violation of BOP policy," [*id.*] and that "[t]he act of snatching Plaintiff of[f] the ground by the handcuffs was a clear act of negligence.  Officers have a duty to handle inmates with care, that duty was breached when the officer snatched Plaintiff off the ground by the handcuffs (violating policy)."  [*Id.* at p. 6]

In his response to Defendant's motion (and after being given an opportunity to view the video [*see* Record No. 24]), Smith concedes that he "had always been under the impression that he was moved by the restraints, because this is what it felt like."  [Record No. 26 at p. 10]  But after his review of the footage, Smith states that "you can clearly see the officer on the right has one hand gripping Plaintiff's bicep and his left hand is somewhere around the elbow region when he lifts Plaintiff and injures Plaintiff's shoulder."  [*Id.*]  Thus, according to Smith's response, he now believes that he was lifted by his bicep and elbow region – not by handcuffs.

Regardless of exactly how Smith was allegedly injured (whether it was by being lifted by the handcuffs as Smith originally alleged, or whether it was by being lifted by his bicep and somewhere in his elbow region as he now contends) the parties do not dispute that Smith's alleged injuries occurred while he was being lifted off the ground, after he had been handcuffed and while he was in the process of being removed from his cell.  Because the applicable statutes, regulations, and policies governing the federal employees' conduct in these circumstances allow the exercise of discretion, Defendant's motion argues that Smith's lifting

---

documents incorporated into the Complaint by reference.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  The Court may also consider "other materials that are integral to the Complaint, are public records, or are otherwise appropriate for the taking of judicial notice."  *Ashland, Inc. v. Oppenheimer & Co.*, 648 F.3d 461, 467 (6th Cir. 2011).

claim is exempted from the FTCA's limited waiver of the Government's sovereign immunity by 28 U.S.C. § 2680(a).

## B.

While the United States as a sovereign entity is immune from claims against it, the FTCA constitutes a limited waiver of that immunity, thus permitting suit against the Government for, among other things, personal injuries caused by its employees.  28 U.S.C. § 1346(b)(1).  *See also United States v. Mitchell*, 463 U.S. 206, 212 (1983).  The United States, however, has not waived its immunity for injuries caused by Government employees in the performance of discretionary acts.  28 U.S.C. § 2680(a).  *See also Montez ex rel. Estate of Hearlson v. United States,* 359 F.3d 392, 395 (6th Cir. 2004).  Specifically, 28 U.S.C. § 2680(a) provides that the FTCA's waiver of immunity does not apply to:

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C.A. § 2680(a).  "The [discretionary function exception] is not merely an affirmative defense; it is a jurisdictional bar."  *Stanford v. U.S.*, 992 F. Supp. 2d 764, 770 (E.D. Ky. 2014).  Thus, if Smith's tort claim falls within this exception, this Court lacks subject matter jurisdiction over his claim and it must be dismissed.  *Id.* (citing *Kohl v. United States*, 699 F.3d 935, 940 (6th Cir. 2012).

A two-part test determines whether a governmental act falls within the discretionary function exception.  "First, a court must ask whether the act involves 'an element of judgment or choice.'"  *Montez*, 359 F.3d at 395 (quoting *United States v. Gaubert*, 499 U.S. 315, 322

(1991)).  "The requirement of judgment or choice is not satisfied if a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because 'the employee has no rightful option but to adhere to the directive.'"  *Gaubert*, 499 U.S. at 322 (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)).

If the answer to this first question is "yes," the Court must then ask "whether that judgment is of the kind that the discretionary function was designed to shield."  *Id*. at 322-323. This inquiry furthers the purpose of the exception, which is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort."  *Id*. at 323 (quoting *United States v. Varig Airlines*, 467 U.S. 797, 813 (1984)).  Thus, "when properly construed, the exception protects only governmental actions and decisions based on considerations of public policy." *Id*. (quotations omitted).

Applying this analysis, if a regulation mandates particular conduct and an employee violates that mandatory regulation, "there will be no shelter from liability because there is no room for choice and the action will be contrary to policy."  *Id*. at 324.  In contrast, "if a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations."  *Id*.  In light of this strong presumption, to survive a motion to dismiss, a Complaint "must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." *Id*. at 324-25. [3]

---

[3] Using the example discussed by the Supreme Court in *Gaubert*, a case involving allegations of negligence by federal regulators tasked with supervision of a federally-insured savings and

To apply this test, the Court must first examine the relevant policies at issue. Smith avers in his Complaint that the officers "snatched [him] off the ground by the handcuffs" in violation of a BOP policy stating that "staff are cautioned not to use restraints when lifting or carrying an inmate." [Record No. 5 at p. 4] Although he does not specifically identify the policy being invoked, the use and application of restraints in these circumstances are governed by statute, regulation, and BOP policy. As a general matter, Smith's claim implicates 18 U.S.C. § 4042(a), which, among other obligations, requires the BOP to "have charge of the management and regulation of all Federal penal and correctional institution," to "provide for the safekeeping, care and subsistence" of inmates, and to "provide for the protection, instruction, and discipline" of inmates. *See* 18 U.S.C. § 4042(a)(1)-(3). In addition, the use of force and application of restraints is regulated by 28 C.F.R. § 552.22, *Principles governing the use of force and application of restraints*. This regulation provides, in relevant part, that "[i]f an inmate in a forcible restraint situation refuses to move to another area on his own, staff may physically move that inmate by lifting and carrying the inmate to the appropriate destination." 28 C.F.R. § 552.22(e).[4] Finally, BOP Program Statement 5566.06(6)(e), *Use of Force and Application of Restraints*, adds that, in these circumstances, "[s]taff are cautioned not to use the restraints for lifting or carrying an inmate." *See* BOP Program Statement

---

loan association, if one of the federal officials "drove an automobile on a mission connected with his official duties and negligently collided with another car," the discretionary function exception would not apply, notwithstanding the fact that "driving requires the constant exercise of discretion." *Gaubert*, 499 U.S. at 325 at n. 7. This is because the official's decisions in exercising discretion while driving the car would not be grounded in policy goals sought to be accomplished by regulations related to the supervision of a savings and loan association. *Id.*

[4] Neither party disputes that the incident occurred while Smith was being placed under control by the Use of Force Team Technique. In such instances, staff is specifically authorized to apply restraints to the inmate. 28 C.F.R. § 552.22(e).

5566.06(6)(e), *Use of Force and Application of Restraints* (Nov. 30, 2005) at p. 7, available at https://www.bop.gov/policy/progstat/5566_006.pdf.

Turning to the discretion allowed by these statutes and regulations, with respect to the directives to the BOP as provided by 18 U.S.C. § 4042(a), the United States Court of Appeals for the Sixth Circuit has determined that, despite the use of the word "shall" by the statute, "the duty imposed by § 4042(a) is of a general nature" and "BOP officials are given no guidance, and thus have discretion, in deciding how to accomplish these objectives." *Montez*, 359 F.3d at 396. Similarly, the use of the word "may" in the applicable provision of 28 C.F.R. § 552.22(e) (providing that prison staff "may physically move" an inmate who refuses to move on his own by lifting and carrying that inmate), rather than the word "shall," demonstrates that BOP officials have discretion in implementing this regulation. *Montez*, 359 F.3d at 397 (concluding that the use of the word "may," as opposed to "shall" in 28 C.F.R. §§ 541.22(a) and 541.23(a) "demonstrates that their implementation is left to the discretion of BOP officials."). Absent mandatory language in the regulation, the regulation does "not impose a mandatory, nondiscretionary duty upon BOP officials." *Id*.

Thus, neither § 4042(a) nor § 522.22(e) specifically prescribe a course of action for prison officials to follow, but rather both "allow BOP officials to exercise judgment when making decisions regarding [prisoner] safety." *Montez*, 359 F.3d at 396-97. Thus, the first part of the discretionary function test is satisfied, as "the BOP has discretion to determine how to accomplish its statutory duty to provide for the safety of inmates." *See Parker v. United States*, 2012 WL 2414887 at *3, No. 11-cv-176-ART (E.D. Ky. June 26, 2012) (citations omitted).

Next, the Court must examine whether Smith's Complaint "alleges facts sufficient to rebut the presumption that the decisions by the prison officials regarding [Smith's] safety were' of the kind that the discretionary function exception was designed to shield.'" *Montez*, 359 F.3d at 397 (quoting *Gaubert*, 499 U.S. at 322-23). The Court finds that he does not. Smith's Complaint alleges that he was injured while being lifted by BOP employees and while he was in restraints, the exact circumstances in which the applicable Government policy allows the exercise of discretion. Thus, this conduct (exercising discretion in determining the best way to lift a restrained prisoner safely) is the type of discretion that the discretionary function was designed to shield. *See Parker*, 2012 WL 2414887 at *3 (finding that the Government policy that provides the BOP discretion to determine how to accomplish its duty to provide for the safety of inmates as imposed by 18 U.S.C. § 4042 and 28 C.F.R. § 541.22 "permits this exercise of discretion and was thus designed to shield BOP officials' judgment concerning prisoner safety") (citation omitted). For these reasons, the decisions made by BOP officials in this case regarding lifting Smith from the ground while he was restrained relate to their exercise of discretion regarding prisoner safety. Accordingly, these decisions fall within the discretionary function exception.

This case might present a closer question if, as Smith originally alleged, federal employees did lift him by handcuffs, as BOP policy specifically cautions against using restraints for lifting or carrying an inmate. *See* BOP Program Statement 5566.06(6)(e), *Use of Force and Application of Restraints* (Nov. 30, 2005) at p. 7, available at https://www.bop.gov/policy/progstat/5566_006.pdf.[5] However, as noted herein, for purposes

---

[5] The Government is clear in its motion that it "does not argue that lifting by the restraints would fall under the discretionary function exception, in light of the Program Statement's

of the application of the discretionary function exception, "whether a regulation applies and whether it is mandatory are jurisdictional facts, [thus] the Court…cannot assume the plaintiffs' allegations regarding these questions are true" *Stanford v. U.S.*, 992 F.Supp.2d 764, 771 (E.D. Ky. 2014). Here, the irrefutable video evidence shows that Smith was not lifted by handcuffs. [Record No. 21] Indeed, Smith concedes as much in his response to the defendant's motion, stating that he now believes that his shoulder was injured when he was lifted by the armpit and someplace near his elbow. [Record No. 26 at p. 5] For these reasons, Smith's claim cannot be predicated on a violation of this BOP Program Statement because the Program Statement was not violated.

Smith also contends that, after he was removed from his cell, he was placed in restraints applied to his stomach, wrists, and both ankles. [Record No. 5 at p. 5] According to Smith, at the first two-hour restraint check, Lt. Melvin came to check the restraints, which Smith claims violates BOP policy providing that "[t]he staff member that placed inmate in restraints is not to be involved in the restraint checks." [*Id.*] The use of restraints in these circumstances is governed by 28 C.F.R. § 552.24(e), *Use of four-point restraints*. This regulation provides that, "[w]hen the Warden determines that four-point restraints are the only means available to obtain and maintain control over an inmate…[a] review of the inmate's placement in four-point restraints shall be made by a Lieutenant every two hours to determine if the use of restraints has had the required calming effect and so that the inmate may be released from these restraints (completely or to lesser restraints) as soon as possible." 28 C.F.R. § 552.24(e). *See also* BOP

language" specifically cautioning against using restraints for lifting or carrying an inmate." [Record No. 17 at p. 7, n. 6] Likewise, the Court need not reach this conclusion, as Smith was not lifted by the restraints, thus this BOP policy does not apply.

Program Statement 5566.06(10)(e) at p. 13-14.  Thus, this regulation specifically requires the Lieutenant to conduct the two-hour check on restraints and does not preclude any particular staff member from doing so, even if that staff member was involved in the initial placement of the inmate of restraints.[6]  Accordingly, even if the Court construed this regulation as non-discretionary, "if a regulation mandates particular conduct and the employee obeys the direction, the Government will be protected because the action will be deemed in furtherance of the policies which led to the promulgation of the regulation."  *Gaubert*, 499 U.S. at 324. Smith plainly alleges that Lieutenant Melvin conducted the two-hour restraint check [Record No. 5 at p. 5], which, if true, is exactly what the applicable regulation required him to do. Thus, Smith's claim cannot be predicated on an alleged violation of 28 C.F.R. § 552.24(e) because, according to Smith's own allegations, Lieutenant Melvin's actions complied with the directives of that regulation.

In summary, Smith's alleged shoulder injury occurring in April 2019 was sustained while federal employees were acting pursuant to a policy which allowed them to exercise discretion while carrying out that policy.  Moreover, the decisions of the officers with respect to lifting Smith (who had repeatedly indicated that his legs had given out) were exactly the type of decisions regarding prisoner safety that these policies were designed to cover.[7]

---

[6] BOP Program Statement 5566.06(6)(f) provides that "[i]f the inmate was place in restraints because of an assault on staff, the assaulted employee must not be involved in deciding whether the inmate has regained self-control."  BOP Program Statement 5566.06(6)(f) at p. 7. However, this provision is inapplicable here, as there are no allegations indicating that Smith was placed in restraints because of an assault on Lieutenant Melvin.  Rather, Smith alleges that Lieutenant Melvin responded with the emergency response team after Smith verbally complained to him about food.  [Record No. 5 at p. 3-4]

[7] While Smith argues in his response that he did not refuse to move, the video footage clearly shows Smith collapsing to the floor and claiming that his legs had given out.

Accordingly, the discretionary function exception applies to the decisions made by prison officials with respect to lifting Smith in these circumstances.  Smith's "negligent lifting" claim will be dismissed for lack of subject matter jurisdiction.

## C.

Smith also asserts a claim based on medical negligence relating to the subsequent treatment of his shoulder injury that he claims he sustained during the April 15, 2019 incident. The Government seeks either dismissal of this claim without prejudice or, in the alternative, transfer of the claim to the United States District Court for the Northern District of Illinois under the theory that it actually asserts medical negligence regarding medical care after Smith was transferred to USP-Thomson in Illinois.  [Record No. 17]  However, while perhaps inartfully pled, the "medical negligence" claim asserts that Smith was examined by Dr. Steel on November 5, 2019, while he was still at USP-Big Sandy.  Dr. Steel then ordered an MRI and, subsequently, an "active medical hold" was placed on Smith.  [Record No. 5 at p. 6] According to Smith, he was later transferred to USP-Thomson on November 7, 2019, despite this medical hold.  Smith contends that this action constitutes negligence in violation of BOP policy.  [*Id.*]

It is true that Smith's Complaint also refers to treatment after he arrived at USP-Thomson, specifically complaining that staff at USP-Thomson claimed to know nothing of the November exam or Dr. Steel's order for an MRI.  [Record No. 5 at p. 6]  If Smith's treatment at USP-Thomson were the basis for his medical negligence claim, the United States would be correct that his claim should be dismissed without prejudice or transferred to the United States District Court for the Northern District of Illinois.

-14-

However, in response to Defendant's motion, Smith explains that his reference to treatment at USP Thompson was merely to "continue[] his narrative," and was not intended to allege a medical negligence claim regarding his treatment at USP Thomson.  [Record No. 26 at p. 8]  Smith is clear that his medical negligence claim relates to his treatment at USP Big Sandy immediately prior to his transfer in November 2019.  He explains that:

> USP Big Sandy medical staff were clearly negligent when Nurse Slone[8] abruptly ended plaintiff's physical therapy after doctor Steel order a MRI.  Big Sandy medical staff never conducted the MRI, they removed the 11-5-19 exam report from plaintiff's file that ordered the MRI, they transferred plaintiff while plaintiff had a[n] active medical hold (a violation of B.O.P. Policy), and they transferred Plaintiff while Plaintiff was in a injurious state with no instructions or any info on Plaintiff's situation/injury treatment.

[Record No. 26 at p. 8-9]  In support, Smith attaches an "Inmate Intra-system Transfer" Form generated on November 13, 2019, showing that there was a "medical hold pending ORTHO visit."  [Record No. 26-1]

But Smith's clarification of his claim, while perhaps avoiding transfer to another Court, only confirms that this Court does not have subject matter jurisdiction over Smith's medical negligence claim.  The Court undoubtedly has an ongoing "duty to consider [its] subject matter jurisdiction in regard to every case and may raise the issue *sua sponte*."  *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009); *see also Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1193 (2010) ("Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it.").

---

[8] While his response states that Nurse Slone interfered with the treatment ordered by Dr. Steel, Smith's Complaint alleges that Nurse Crum was the individual who Smith overheard trying to convince Dr. Steel to end his treatment.  [Record No. 5 at p. 6]

Smith is clear that his FTCA medical negligence claim is based on his medical care at USP-Big Sandy in November 2019; specifically, his allegation that Dr. Steel's November 5 MRI order was removed from his records and that he was transferred despite a medical hold on him, which he states was negligent and in violation of BOP policy.  However, the FTCA permits the exercise of subject matter jurisdiction over a claim only if it has already been presented to the agency for administrative settlement and the agency has denied the request.  28 U.S.C. § 2675(a); *Myers v. United States*, 526 F.3d 303, 305 (6th Cir. 2008).  If the plaintiff did not both file an administrative claim and receive a denial from the agency before filing suit, the FTCA mandates the dismissal of a suit against the United States.  *McNeil v. United States*, 508 U.S. 106 (1993).

Here, Smith alleges that he fulfilled this requirement by filing an Administrative Tort Claim form with the BOP (assigned Claim No. TRT-MXR-2019-06204) on August 27, 2019, which was denied in January 2020.  [Record No. 5 at p. 2]  He also attaches a letter from the BOP dated August 27, 2019, confirming receipt of his administrative claim for an alleged personal injury suffered at USP Big Sandy.  [ Record No. 5-1]  However, a tort claim form submitted in August 2019 cannot present a claim for medical negligence that did not allegedly occur until three months later.

A person filing a tort claim under the FTCA must: "1) give written notice of a claim sufficient to enable the agency to investigate the claim and 2) place a value (or "sum certain") on the claim."  *Glarner v. U.S., Dep't of Veterans Admin.*, 30 F.3d 697, 700 (6th Cir. 1994).  *See also* 28 U.S.C. § 2675(a).  While Smith's medical negligence claim does relate to the treatment for his injuries sustained in the April 2019 incident, it is clearly a different claim,

based on a different theory of negligence and involving different parties and applicable policies.

"Although an administrative claim need not propound every possible theory of liability in order to satisfy [the presentation requirement of 28 U.S.C. § 2675(a)], ... a plaintiff cannot present one claim to the agency and then maintain suit on the basis of a different set of facts." *Roma v. United States*, 344 F.3d 352, 362 (3d Cir. 2003) (citations omitted) (holding an administrative claim filed alleging that a negligent instruction to a firefighter to remove his breathing apparatus while fight a fire was insufficient to provide notice of claim that federal employees were also negligent in failing to prevent the fire in the first place). *See also Deloria v. Veterans Admin.*, 927 F2d 1009, 1012 (7th Cir. 1991) (administrative claim that VA officials conspired to alter claimant's medical records insufficient to apprise the VA of additional claims of medical malpractice and negligent supervision where those allegations involved wholly distinct incidents). Thus, Smith's presentation of his claim in August 2019 that BOP employees acted negligently when they lifted him while he was in hand restraints in April 2019 could not possibly have provided adequate notice to enable the BOP to investigate his claim that different BOP employees acted negligently when they allegedly interfered with his medical treatment after a November 2019 exam and transferred him to a different facility even though he had a medical hold in place.

Because Smith's medical negligence claim could not have been raised in his administrative claim presented to the BOP, he failed to exhaust his administrative remedies with respect to this claim, which is required prior to filing a lawsuit.

While the United States did not raise this issue in its motion to dismiss, Section 2675(a)'s requirement that an administrative claim be filed as a prerequisite to filing a civil

action under the Federal Tort Claims Act is jurisdictional and "not capable of waiver or subject to estoppel." *Garrett v. United States*, 640 F.2d 24, 26 (6th Cir. 1981) (citations omitted). *See also Bumgardner v. United States*, 469 F. App'x 414, 417 (6th Cir. 2012) (Section 2675(a)'s exhaustion requirement is jurisdictional) (citing *Joelson v. United States,* 86 F.3d 1413, 1422 (6th Cir. 1996)); *Mills v. United States*, 127 F.3d 1102 (6th Cir. 1997) ("The filing of an administrative claim is a jurisdictional prerequisite to the filing of a complaint under the FTCA."). Therefore, because Smith failed to comply with this requirement with respect to his medical negligence claim prior to filing his Complaint, this Court has no jurisdiction over this claim and it must be dismissed without prejudice.

Rule 12(h)(3) of the Federal Rules of Civil Procedure requires dismissal if the Court "determines at any time that it lacks subject-matter jurisdiction." *See* Fed. R. Civ. P. 12(h)(3). However, because "a district court may not dismiss a Complaint *sua sponte* without first giving notice to the plaintiff," *Brent v. Wayne Co. Dept. of Human Services*, 901 F.3d 656, 700 (6th Cir. 2018), Smith will be directed to show cause in writing why his medical negligence claim should not be dismissed for lack of jurisdiction. If he fails to respond to this Show Cause Order within the time provided below, the Court will dismiss his claim without prejudice for the reasons stated herein, as well as for the failure to comply with a Court Order. *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991) (a *pro se* litigant is not afforded special consideration for failure to follow readily comprehended court orders).

### III.

For all of the foregoing reasons, the Court finds that Smith's negligence claim related to his allegations that prison officials acted negligently when they lifted him while he was restrained in April 2019 falls within the discretionary function exception. Therefore, it will be

dismissed for lack of subject matter jurisdiction under 28 U.S.C. § 2680(a).  Therefore, to the extent that the defendant's motion to dismiss [Record No. 17] seeks dismissal of this claim, it will be granted.  With respect to Smith's allegations of medical negligence, the Court will direct Smith to show cause in writing why this claim should not be dismissed for lack of jurisdiction.

Accordingly, it is hereby

**ORDERED** as follows:

1.     The defendant's motion to dismiss for lack of jurisdiction [Record No. 17] is **GRANTED** in part.

A.     To the extent that the defendant's motion seeks dismissal of the plaintiff's "negligent lifting" claim, the defendant's motion is **GRANTED** and the plaintiff's "negligent lifting" claim regarding his extraction from his cell on April 15, 2019, as alleged in his Complaint [Record No. 5] is **DISMISSED** with prejudice under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

B.     To the extent that the defendant's motion seeks dismissal or transfer of the plaintiff's medical negligence claim, the defendant's motion is **DENIED**, without prejudice.

2.     Within **twenty-one (21) days**, the plaintiff is directed to **SHOW CAUSE** in writing why his medical negligence claim related to his medical treatment in November 2019 and subsequent transfer while a medical hold was pending as alleged in his Complaint [Record No. 5] should not be dismissed for lack of jurisdiction.

A.     The defendant may file a reply to the plaintiff's response within **fourteen (14) days** after the plaintiff files his response.

      B.     **Smith is advised that his medical negligence claim will be dismissed if he fails to comply with this Order within the time directed.**

Dated: January 20, 2021.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky